Per Curiam.

The motion for a continuance is over-ruled. But if the defendant wishes to avail himself of a jury de mediatate linguae, it is allowed him by the statute, and we will direct the sheriff to summon such jury-
The Sheriff summoned a jury de mediatate linguae in obedience to an order of the Court, and they were called & sworn; but without the consent of the defendant.
The writ in this case was tested on the 16th day of April 1816 and made returnable on the third monday of September next thereafter.
The declaration, which was filed on the 15th day of Septr 1817, was in the following words, to wit;
*378 “Michigan Territory. In the Supreme Court, of the Term of September, one thousand eight hundred and sixteen.
John S. Roby complains of Alexis Luc Reaume, in custody &c. of a plea of the case &c.
For that, whereas the said Alexis Luc Reaume on the 15th day of December 1814, at Detroit in the Territory of Michigan, made his certain note in writing, commongly called a promissory note, with his proper hand writing thereto subscribed, bearing date the day and year aforesaid, and then and there delivered the said note to said John S. Roby, and and thereby three months from date of sd note, promised to pay the said John, by the name of John S. Roby or his order, Two hundred & thirty six dollars and forty cents, with interest after, meaning after the day limited for payment, For value received. By reason whereof and by force of the Statute in such case made and provided, the said Alexis became liable to pay the said John, the said Sum of money in said note mentioned, according to the tenor and effect thereof, and being so liable the said Alexis in consideration thereof, afterwards, to wit, on the same day and year aforesaid, at Detroit aforesaid, in the Territory aforesaid undertook and then and there faithfully promised the said John to pay him said sum of money in said note mentioned according to the tenor and effect thereof. Yet the said Alexis Luc Reaume, not regarding his promise aforesd but intending to damage the said John in this respect, has not paid him the sum of money in sd note mentioned, altho’ often requested so to do, to wit, on the day of payment mentioned in said note, and often afterwards, to wit, at Detroit aforesd But hath hitherto refused and still doth refuse to pay the same.
And whereas afterwards, towit, on the 16. day of May, 1815, at Detroit aforesd in the Territory aforesd in consideration that the said John S. Roby would sell and deliver the said Alexis Luc Reaume, all the goods [*] and merchandize the said John had on hand in store at Detroit on said day, at first cost of said goods, adding thereto the costs of transportation of the same, to wit, from Boston in the State of Massachusetts, the place where purchased by sd John, to Detroit, he the said Alexis did then and there undertake, promise and agree, to purchase and receive said goods, and to pay the said John for the same on demand, the price and value of said goods, the amount of purchase to be ascertained by adding to the first cost, the transportation as aforesaid; the payment to be made in manner following, to wit, Fifteen hundred dollars, on account of the purchase of said goods, to be paid by said Alexis to said John in good American Certificates, called Quarter-master paper, and such as Col. Anthony Butler (then commanding the Post at Detroit) upon inspection and examination, should pronounce good, the said Alexis to procure the same to be examined by said Butler; and the balance of said Sum, over and beyond said Fifteen hundred dollars *379 to be paid by said Alexis to said John in money. And the said John avers, that relying on the promise of the said Alexis as aforesd made, and in consideration thereof, afterwards, towit, on the same day and year aforesaid, to wit, at Detroit aforesd, he the said John did sell and deliver to sd Alexis, and the said Alexis purchased and received of the said John under, and pursuant to, the stipulations and agreement aforesd divers large quantities of goods and merchandize, to wit, of the value of two thousand, one hundred and Eighty seven dollars and eighty four & cents, being the amount of the first costs of said goods, and the costs and expenses of transport of the same goods aforesd, by said John to the said Alexis as aforesaid of which the said Alexis then and there had notice, and which said goods and merchandize so sold and delivered by said John to sd Alexis as aforesd consisted of all the goods and merchandize he the said John had on hand in his said store at Detroit, on the day & year aforesaid. Yet the said Alexis not regarding his agreement, promise and undertaking, so as aforesaid made to said John, but intending to deceive the said John, has never paid and satisfied the said John the sum of money last mentioned, by the delivery of quarter-master paper, inspected and approved of as aforesaid, altho’ the said John was at all times ready at Detroit, to accept and receive the same to the amount of Fifteen Hundred dollars aforesd, and often requested the said Alexis to make payment for the goods aforesd, to wit, Fifteen Hundred dollars in paper of the denomination and description aforesaid, and the ballance of said sum in money, to wit, afterwards, on the Ist day of June in the year last aforesaid, to wit, at Detroit aforesd, and often afterwards, to wit, at Detroit aforesd— But said Alexis to pay said John the value of said merchandize, according to the tenor of said agreement, or otherwise satisfy said John hath wholly neglected to pay him the said John still refuses.
And also, for that whereas the said Alexis Luc Reaume, afterwards, to wit, on the 16. day of April, 1816, at Detroit in the Territory of Michigan, was indebted to the said John S. Roby in the sum of Five thousand dollars lawful money of the United States of America, for divers goods wares and merchandizes by the said John before that time sold and delivered the said Alexis and at his special instance and request; and being so indebted, he the said Alexis in consideration thereof, afterwards, to wit, on the day and year last mentioned, at Detroit aforesd in the Territory aforesd undertook and promised the said John to pay him said sum of money last mentioned, when he should be thereunto afterwards requested.
And also, for that whereas afterwards, to wit, on the day and year last mentioned, at Detroit aforesd in the Territory aforesd in consideration that the said John had before that time sold and delivered the said Alexis at his special instance and request, divers other goods, wares, and merchandize, he the said Alexis undertook and then and there faithfully the said John to *380 pay him so much money as he therefor reasonably deserved to have: And the said John avers, that he therefor reasonably deserved to have of the said Alexis other Five thousand dollars of like lawful money of the United States, to wit, at Detroit aforesd in the Territory aforesd whereof the said Alexis then and there had notice.
And whereas the said Alexis, afterwards, to wit, on the same day and year last aforesaid, at Detroit, in the Territory aforesd was indebted to the said John in the sum of Five thousand dollars of like lawful money last aforesd for a like sum of money, by the said John before that time at the like special instance and request of the Alexis, paid, laid out and expended; and being so indebted he the said Alexis in consideration thereof, afterwards, to wit, on the same day and year last mentioned, at Detroit aforesd in the Territory aforesd undertook and promised the Said John to pay him said sum of money last mentioned, when afterwards thereunto requested. Yet the said Alexis, not regarding his promises and undertakings aforesd in the three last counts mentioned, but intending the said John in this behalf to deceive, has never paid the said John either of the said sums of money in said three last counts mentioned, nor any part thereof, altho’ often requested so to do by the said John, to wit, afterwards, on the day and year last mentioned, to wit, at Detroit aforesd—But the said Alexis to pay the same or otherwise satisfy sd John hath hitherto neglected and refused, and to pay him the same still doth refuse.
By means of the whole premises aforesaid the said John saith he hath sustained Five Thousand dollars damages, wherefore he brings suit, &c.”
To this declaration the defendant pleaded non assumpsit; and at the last Term issue was joined. During the same Term a rule was taken by defendant for a bill of particulars, and early in the vacation the plaintiff delivered defendant a paper which set forth the agreement in the 2d count of his declaration mentioned. On the 19. Oct. of the present year, a regular bill was filed, exhibiting the defendants account with the plaintiff.
No venire issued to the Sheriff to summon the jury in this case; the jury summoned previous to the Term had been discharged.
The plaintiffs books were exhibited to the jury, and the clerk who made the entries swore they were made by him. But one item he found erroneous, which he stated should have been credited the defendant, instead of charged to his account; and it was now rectified by him. He said the plaintiff had received the “American certificates” or “Governmental paper” of the defendant, but knew not on what conditions. The plaintiff once “took the paper from his desk and said he was going to Col. Butler’s that he might examine it”; but the witness knew nothing of it afterwards.
The defendant produced a paper, on which the amount of his account with the plaintiff was stated, and the American certificates were credited *381 him; and the balance as there struck was in defendants favor. This witness recollected making it himself and giving it to defendant, but for what purpose he did not remember. At the time he did it, he was not the Clerk of plaintiff, but “was drawing [*] off accounts for him.” He had never furnished defendant with any other statement of his account; nor was it shown that the defendant had received any other than this.
The plaintiffs Books of Accounts were sent to the jury at their request after they had retired from the bar, to which the defendant did not consent.
The jury returned a verdict for the plaintiff, for $2008.75.
On Friday October 22, the defendant, by his Attorney, moved the Court, that the verdict of the jury in this case be set aside, and a new trial granted. The motion for a new trial, on the part of the defendant, this day came on to be argued.
Woodbridge, for defendant.—The practice of this Court in granting new trials, he said he was unacquainted with; but, as it was a proceeding at common Law, he conceived it would conform to the practice of [*] courts in England. He referred to 3 Bl. C. 390, 3, 2 Tidd’s Pr. 814-19, 1 Burr. R. 393, by which authorities the object in granting new trials was shown, and as there defined,-—-as a general right,—the defendant in this case was entitled to a new trial.
The present motion was founded on the following reasons; any one of which he believed a sufficient cause for granting the motion.
First, SURPRISE. At the last Term of the Court, defendant had obtained a rule on the plaintiff, to furnish him with a Bill of the particulars of his demand. In the plaintiff’s declaration there was, besides the common counts for goods Sold and delivered, and a quantum meruit thereon, a special count, stating an agreement between the parties, on the subject of the sale of the goods now in question. During that Term, or in the early part of vacation, the counsel for the plaintiff delivered him a copy of the Special agreement, & informed him that was the only bill of particulars he could then, or should probably ever [*] be able to, give. Hence the defendant had reason to suppose that plaintiff relied upon his special count only, and accordingly shaped his defence to that point, and with a view of meeting him on that alone. And in that event, it would have been sufficient for him to prove, the contract, as stated, did not exist. A bill of particulars operates as an amendment of the declaration, or pleading under which it is required. 1 Tidd Pr. 537, Peak, 213, 2 Bos. & Pull. 245.—
But at this present Term, the plaintiff comes into Court, and files a new bill of particulars, Showing that he relied upon the common counts, and deserting intirely the Special agreement. Even if he could thus abandon his first bill, which is denied, the forcing us to trial immediately after filing the second bill, was a surprise; for he lulled us into a supposed security by *382 the first. If we were bound to accept the new one, its late delivery, at least, entitled us to a continuance to the next Term.
The general counts at all times subject a party to Surprise. They infringe upon the general principles and system of pleading, and should be restrained. 2 Com. 19, 2 Wash. R. 172, 1 Call. R. 239. A bill of particulars is used to remedy the inconveniencies of the common counts—to shorten the pleadings-—to restore, in a measure, the ancient manner of pleading—and more especially for the information of the parties, court, and jury. From the great reliance placed upon them, courts will never suffer anything to be proved on the trial, which is not charged in the bill. 1 Tidd's Pr. 337, 2 Bos. & Pull. 243.—
Second; The verdict was contrary to law and evidence.
It is admitted, on the part of the plaintiff, that a special contract existed between the parties. Where there is a special contract, that contract must be sued upon; for the court will not, and cannot, make contracts. The Law cannot imply a contract, where it is proved that an express one exists. A special contract for goods sold and delivered, must be specially declared upon, and it is contrary to law to admit it to be given in evidence under the general counts. Esp. N. P. 130-8, 1 Chit, on Pl. 302, 338, 2 Com. on C. 226, 2 Bur. R. 1098, 1 New Rep. 331, 270, 6 D. & E. 320, 7 ib. 384, 1 Bac. 262, Lawyers Ast. 22, 3 East 316, 431, 2 Mass. T. R. 147, 4 Cranch 239.
In-as-much as there was a Special count in the declaration, and the defendant had been served with a copy of a special agreement, as a bill of particulars, on which the action was founded, it was not competent for the plaintiff to abandon that count, and adduce to the jury, evidence of the subject of that contract under the common counts.
It was not regular for the court to instruct the jury, or to express an opinion, on the matters of fact. They have no right to express even an opinion as to the weight of the evidence adduced; nor how far it went in support of facts stated in the declaration, x Wash. R. 2.03.
The Court did instruct the jury, that no special agreement was proved respecting the “Governmental Paper,” and that that paper was not received by the plaintiff in payment for the goods, “nor” said the court, “did it appear to us that the plaintiff was to do any thing with it.” Whereas about the time of the Sale of the goods, it was Shown by the plaintiffs own witness, that he received that paper of the defendant to an amount equal to that Sale, for the purpose of having it allowed by the commanding officer. Did he show that he ever presented it? He left his house with the papers one day and told his Clerk at the time, that he was going to Colo. Butler’s, the then commanding officer. And he proved nothing farther relative to their presentment. But the Court instructed the jury, from this testimony alone, that it was fair & reasonable to presume that he did present them at *383 that time, and that they were disallowed! The inference itself was not only unwarranted, but it was also incompetent for the Court to direct them what the inference should be. It was a matter solely for the consideration of the jury.
But it was proved the plaintiff did not keep the paper in his own possession, but for some purpose or other, passed it over to a third person, a stranger to us in the transaction. Hence if he did not intend to receive it as a valuable consideration for the goods, he made it completely his own by parting with it, or not returning it to us. 3 Cranch. 311. Peake 233. 248.
It did not appear the defendant was informed of the situation of the paper until the day of this trial, and it was then produced at the instance of the Court. The authorities last quoted sufficiently show that when an order, note, or bill of exchange, are received as collateral payment only, it becomes actual payment by parting with it, or delivering the Same, to a third person, or by not using due dilligence to obtain it. And invariably, the onus probandi devolves upon the plantiff, when he Sues to enforce the payment.
Hence we were Surprised; and the evidence which the jury received was incompetent and illegal: it did not prove the issue, but did prove an existing contract—rather of barter than of Sale—which the plaintiff should have sued upon. 1 H. Blac. R. 287.
In this case interest was not recoverable; yet the jury allowed interest for more than four years. The account was unliquidated, and interest cannot be given on an open account. 3 Wils. R. 205, 2 Com. on C. 207, 1 Dal. R. 265-6-7-316, 349, Coxe’s R. 176, 2 Call’s, R. 366, 1 New Rep. 205, 12 East, 419, 1 H. Bl. 305, 2 Wm Bl. R. 761, Kirby R. 207, Root’s R. 314, 248, 2 Bos. & Pul. R. 235, 1 Will. & C. 312.—-An account closed is not an account Stated. 5 Cranch R. 19.— If the plaintiff contends the short minute his Clerk furnished us is an account Stated, or the Statement of the closing of it, we of course grant it; for by that he has given us all the credits we ask, and in this case have claimed; The balance as there Struck brings the plaintiff in our debt. At no other time does he pretend to have presented his account.
If that paper is good for one purpose it is for another: and the verdict, allowing that minute to be the statement of our account, was manifestly unjust and erroneous.
The plaintiffs books of account were sent to the jury at their request, without the consent of the defendant, after they had retired from the bar.
Except it be a sealed instrument, without consent, a jury cannot take with them, examine, or receive, at their room, any evidence, or papers, whatever. Will you Send a witness to a jury, and permit them to question him, without the presence of the court or the parties? Allow the jury to take books with them, and do you not suffer the parties to make evidence *384 for themselves? What may not such books contain? They may contain illegal and false charges, items not proved by the witnesses, and they may also contain offers of bribery. To almost every species of villany and corruption you throw open the doors to suitors and the community at large. The court cannot receive a book of account in evidence; much less can a jury take it with them, without consent of both parties. Jurors can only receive testimony in open court. Cro. Eliz. 189, 6 Bac. 768. Books themselves are illegal testimony when produced for their owner. 3 Bl. C. 368, Bull N. P.—
Third: MISTRIAL. The 6 Bac. 660. 2 Morg. Es. 266. 3 ib. 64-5. were referred to on this subject.
There was no legal constitutional Jury. A venire is required by law, and in this case no venire issued. The jury summoned previous to the Term had been discharged, and this jury now attending were brought here at the instance of the Court, and by their verbal order to the sheriff.
The Statute of the Territory* respecting petit Jurors contains a declaration that it is adopted from the code of Virginia, and is as follows;—“That for the trial of all causes in the Supreme and district Courts of this Territory, when a jury may be necessary, the marshall shall summon a Sufficient number of persons, not being under the age of twenty-one years, to attend the Court, that out of them may be empannelled sufficient juries for for the trial of causes depending in such Courts.” Woodward Code, 48.—
In all cases when a Statute is dificient, either in its principles or detail, the common law remedy must be pursued; and it is a Sound, established rule, that you must construe every statute according to the common law; thus Supplying its defects, enforcing its principles, or preserving the Symmetry of the Science. Hence, if a power be given to a new Court to hear and determine a particular class of cases, the power must be exercised according to the common law, that is, by jury, and according to the rules of evidence, &c. Bull. pt. “Statutes.”—This Statute therefore leaves the common law as it originally Stood on this point, and the necessity of a venire is not Super-ceded, nor the requisites, that a juror be a free holder, and a resident, dispensed with.
The Statutes of this Territory are to be adopted from those of the original States. This purports to be taken from Virginia. But the Court have Said the words of their Statute need not be copied; and at all events, using your honors’ emphatic language—used too emphatically—“We put our own Construction upon it.” The Chief Justice expressly Says, “We are not bound to put the Same Construction upon a law, as is given it in the State from whose Code we adopt it.” It is my misfortune to disagree with the Court on these points and I hold such a proposition to be contrary to every sound rule of construction. Other courts in the States, and without *385 half so strong reasons, do submit to the humiliation of adopting the construction of a law—or rather the meaning of the law—with the law itself.—
2 Day, 225-6,1 Bin. 218,580. And let me ask, what but the meaning of the law could it have been intended to adopt? Was it the unmeaning twenty-four letters of the alphabet? brought here, as Cadmus brought them to Greece?—And when so imported, to be moulded to Your Honours fancy? Surely not! If the words of which your statute is composed, have acquired a fixed and definite meaning in the state from which they are brought, you must take them in that sense; and if whole Sentences, and the whole Statute have acquired a fixed meaning, that meaning must follow the letters of the law, as the soul does the body! Will you go to England to find the meaning of the word chapeau, rather than to France? or, refusing to resort to any authority, say it means “coat,” or any other thing? But there is another, and a political, reason, which must have operation on this question. It grows out of the nature of our Government. A Strange, anomalous Government indeed it is, and at best has odious features. Examining its Structure, we find every thing of Sovrignty which remained here, vested in four men.
The Governor brings with him into the legislature, the Executive power, and the Judges the Judicial. What possible form of Government would seem so intirely comprehended within the definition of a Despotism! And can it be, that the worthies of the Revolution—our very ancestors—those who struggled so hard, who bled so profusely, for their civil liberty, could have thought so lightly of ours? Could have devised no better garran ty for ours ? It was not, it could not be. Where, then, looking at the ordinance of ’87, (our Constitution) do we find this bitter garran ty? We find it in the assurance that all judicial proceedings shall be according to the course of the Common Law!—that common law, (now no favorite here—but) then, So highly valued. We find it in the security to us more especially of the right of trial by jury. We find it in the power reserved to congress of Supervising the laws adopted. And more especially we find it in that provission which forbids the Governor and judges from “making’ any law whatsoever, but simply authorises them to adopt Statutes from the different States in the Union, in all of whose codes they knew, and we know, the Liberty of the subject, and all his dearest rights were, and must be well Secured. They are all free and republican States; their Governments and their laws were based upon civil liberty: By limiting thus the power of the local government;-—by restraining it from making, and only permitting it to adopt Laws, Congress well Supposed that this Government would not—could not—impair the civil rights of the People: Thus understood;—thus administered—effect being thus given to the liberal views of the old Congress, this Government was well devised for us. And will the court consider such restrictions idle; and will you sweep away these, our only barriers? You Say you may use your own words in *386 adopting laws: you may put a different construction on those laws from that which is put upon them in the state whence they purport to have been adopted: a particular manner of getting a jury into the box, it is said, is a mere matter of form, and may be dispensed with, and what do you leave to the unfortunate inhabitant of—MICHIGAN ! The laws of his forefathers, the common law, and the sacred trial by Jury, are in a breath anihilated by the authoritative decision of this honorable Court—the last and highest tribunal in this Country. Where is the Security to liberty and to property! A venire is mere matter of form—that a juror be a freeholder, is mere matter of form—and So, may it please Your Honors, is the number of twelve for a jury, but mere matter of form! Ten men will answer as well as twelve: and So will Six as ten: and so will three, as Six! And let these three be, not freeholders, but vagrants, wanderers, men fleeing from justice, if you please, and —“matter of form need not be preserved—the provisions of the common law are in this respect useless”! For an arbitrary Judge—for a Jeffries—such principles and practice may be convenient. A Jury may be called,—he dislikes their countenences, or perhaps their names—the Sheriff may call in others and these again it is easy to discharge, until the court Shall at length announce itself pleased! And is this the trial by jury, which our fathers bled for? Is this the trial by jury which they interposed between tyranny and their freedom?—
A party to a suit in which his reputation and wealth may be at stake, knows on a certain day his case is to be tried. He Suggests it to his friends, who eagerly press forward on that day to your hall. The court directs the Sheriff to Summon a Jury for the trial of that case, and he turns around and impannels these very men, who, from interest or corruption, are thus in waiting to subserve the interest of the friend or purchaser.!
And now let me ask, where is the benefit of the boasted trial by Jury? Where is the barrier to our civil liberty? And what is it worth? Not a sigh! First make it worthless, and there will be no difficulty;—-we will all join “and throw it like a loathsome weed away”!
But was it really intended that this government should legislate, that they should make laws? If so why not have stated it plainly in the ordinance, and made it at once an unqualified Despotism. Is it the Same to adopt, and make laws? On the present plan, you may take letters from one State, Syllables from a second, words from a third, Sections from a fourth, and then say you adopt it! And would you require us to believe that this is not legislation! What shall limit the unbounded range you take; more especially what and who shall restrain you ? Once in ten years Congress may, perhaps, examine your Code, and in the mean time the people in this Country must remaine obedient:—like good subjects,—and like their Strangled liberty,—speechless—! The construction of a Statute is in truth its *387 Soul—its life—its meaning, it is indeed the Statute itself. Suppose you adopt a Statute from New York the meaning of which has been long Settled, but you think (correctly or not, I care not,) that a wrong construction has there prevailed, and you decide diametrically opposite from Such settled construction: You know the meaning of the Statute in the State from whence it is adopted, but will not give it the Same meaning here. Is it then the Same Statute? Do you comply with the requisitions of the ordinance in adopting Statutes! No, you deal with us in a double Sennce—you keep the word of promise to the ear, but break it to the hope.
This is not mere matter of discretion in the court. You cannot thus fritter away the ordinance. Your Honor, the Chief Justice, has said, this is matter of discretion! Discretion? What is it? A thing always uncertain—arbitrary. It is like a Chancellor’s conscience.
In the best men it is often caprice— in the worst it is always influenced by all the evil passions human nature is heir to! Discretion is the law of Tyrants! *
It seems not denyed but that writs of venire facias are used in Virginia;— it seems indeed necessarily inferable from the words of her Statute book. See a Vol R. C. Virginia, 99, 100: “Be it enacted &c. that where by law the Sheriff or other officer is directed to Summon a Jury &c. if the person Summoned &c. fail to attend, to the next court of his county &c, or to the next District Court &c. if the process, under which the jury was Summoned, issued from &c.” Again by the 1 vol. R. C. of Virginia 103, “When the Justices Shall have determined that a prisoner ought to be tried &c. the Clerk of the Court &c. Shall issue a venire facias to be directed to the sheriff &c.” And the issuing of venire’s is Spoken of by her Reporters, x. H. & M. 213, 235, 387. If therefore Such writs do issue THERE, Surely there can be no doubt but that it is the imperious duty of this Court to adopt that course. But if on that point the Court are not Satisfied, let it be remembered that the Common Law, by whose rules this Statute Should be Construed, requires it; that it is according to the course of the common law that Jurors should be so convened; (3 Bac. 728-9), that all parties interested may ascertain, Seeing by the venire who the Jurors are, their qualifications, and how far their may be ground of challenge. But if that course be pursued, which is contended for; if this Court Can, as may Suit their views, take up & put down jurors, I do and will insist that this is not the Species of Jury which was intended to be Secured to us: it is not Such as was Contemplated by the ordinance.
That ordinance is the paramount law: all laws adopted are to be taken Sub lege graviori, and we are thus brought back to the common law Jury. There has been a mistrial in this case: and therefore I pray this verdict may be set aside.
SIBLEY, FOR THE PLAINTIFF.
WOODBRIDGE, in reply;

*389
Now. 4.

WOODWARD, Presiding Judge,
delivered the opinion of the Court.
We do not see on what merits the defendant has relied in this case. We saw none on the trial, and we have always conceived he had none. And as it appears so in the event, we know not why the counsel would have this case so important.
As respects the quarter-master paper, and the other military papers, the defendant wished allowed him as credits, the plaintiff has done every thing reasonable for him to do; and it would have been imprudent in him, as a man of business, on so slender grounds, to allow the defendant an absolute credit for the amount of those papers. It was a part of their agreement, however, that they should be submitted to Col. Butler for his certificate, and it does not appear he approved of them. The onus probandi in this instance lay upon the defendant.
It was reasonable for the Court to compel the trial at that time, because a witness was to leave this City the next morning in the Steam Boat, on his way to England, whence his return was doubtful. His testimony was essential to the plaintiff, as he was the sole witness.
In no respect has there been a Surprise on the defendant. The surprise stated appears rather an inference of law, than a matter of fact.
The Court will not compel a plaintiff to become nonsuit. A nonsuit is intended for the benefit of the plaintiff, and he will not often insist upon a verdict when in the opinion of the Court he has not maintained his action.
But if in such a case the jury should view the law differently from the court, and on their own view of it should find for the plaintiff, the Court are at liberty, if eventual injustice, and that perhaps gross, has not been done, to sustain the verdict. After verdict the court will not make themselves exclusive judges of the law; and they will go a great way in sustaining verdicts.
The present practice in relation to interest has been invariably pursued by this court. This court has as much the right to recommend to the jury *390 when to allow interest, and the rate of it, in cases not recognized by statutes, as the courts of other places. On a liquidated account, we have recommended to juries to allow interest, at the rate of six per centum, per annum; and the account is presumed to be liquidated on being presented to the debtor, and not objected to by him. In this case the jury were correct in allowing interest. It is ascertained from one of the jury that they commenced the calculation of the interest at the period of one year from the date of the last charge in the account, which was just, and as fair as the defendant could expect.
The jury was regularly and legally empannelled; and according to the uniform practice of the Court. It was a jury within both the letter and the meaning of the Statute; and the construction given to that Statute here, is the same as in Virginia, from the code of which State it was taken. There a venire is not used.
The motion for a new trial is over-ruled.—
Woodbridge, for the defendant, moved the Court in arrest of Judgment; and on Wednesday, the 24. Novr., (the counsel for the plaintiff not being ready for argument, and the defendants attorney, being necessarily obliged to set out for Washington) submitted in writing by the Clerk, to the Court, the following reasons and arguments in support of the motion.
“I take it to be a rule invariably true in pleading that every fact which constitutes a link in the plaintiff’s chain of title—that every fact which constitutes an essential part of his right—which limits or shows the extent of his claim, must be STATED, with precision and with certainty, in his declaration.
The plaintiff must show the precise extent of defendants promise; (if the suit be upon a promise,) and in order that the court may see that the promise is legal and binding in law, the consideration of that promise must be fully set out. If the action be upon a sealed instrument, the solemnity of executing the contract—the seal—is in law a sufficient consideration: but in all case of simple contract the consideration must be set out with the same certainty as the promise itself. 7 T. R. 350, 1 Chit. 215, Rush ton & Aspenall, Doug.
These propositions not being deniable I proceed to consider the plaintiff’s declaration in relation to them.
And First. I find the first count incurably defective. No plaintiff is bound to prove what is not stated in his declaration. No defendant can be called upon to resist what is not there stated. No jury can of right find what is not alledged in the pleadings. A general verdict may be considered to have found what is well alledged, and nothing else.
Does the promise of defendant in an action of assumpsit constitute the gist of the action? Must it be set out with precision? See 1 Chit 233. Is a promise well set out which does not show the precise sum of money *391 which defendant undertakes to pay? Certainly not. The plaintiff proves a promise to pay an uncertain sum-—the verdict cannot go beyond the allegation and proof, for to the allegation is it responsive. A general verdict then only proves that defendant promised to pay an uncertain sum. Is a promise to pay an uncertain sum void for uncertainty when neither the contract nor any general law (of which the Court can take notice) furnish any rule by which to render it certain? Surely such promise is void; and if a jury give specified damages for its breach, the verdict must be set aside—the judgment must be arrested. A, promises B, to pay him $100 and interest. Now this promise is certain in three classes of cases only; first, where by statute, the general law of the land, the term “interest,” and the quantum of interest, are defined; second, where, the law prohibiting no rate of interest, the parties regulate that interest, embody that regulation in in the contract, and set it out in the declaration; and third, where by special custom the rate is affixed, and the contract is made in relation to that special custom, and that special custom is set out fully in the declaration, that it may be established by proof.
Of the general law of the land courts take notice ex officio; of contracts they take notice, when stated and proved; of particular, or local, customs, courts cannot take notice, unless proved—they cannot be proved, unless stated.
The Court cannot make contracts—the law never does, though it sometimes authorises jurors to presume promises, on proving legal liabilities, but never unless those promises and legal liabilities are Stated, and that with certainty and precision. And now, what for interest did defendant promise to pay? It is not stated; no custom is stated—no general law of the land affixes it. Once there was a Statute here affixing the rate of interest; courts then acted upon that statute and applied it. That statute is repealed —What comes in lieu of it? The common law? It never gave interest.
Special custom? It is not stated. The contract of the parties? It is not so stated. Does the discretion of the Court Supply all defects ? Does it eke out all contracts? Does it stand in lieu of all law? Then may you sue for a cow and recover an horse! Then may you be charged with a libel—and be hung for theft!—
This count is therefore fatally defective. There is a fact omitted to be stated, which is the very gist of the action; finding all the other facts to be true, does not find that fact, nor is there given in the pleadings any possible rule, by which to Supply the defect; for no Statute exists, in reference to whose provisions the rate of interest can be ascertained. Doug. 683, 1 T.R. 141, 1 Salk. 364, 2 Salk. 662.
And if one count be bad, though all others were good, after verdict, the judgment must be arrested. H. & M. Rep. 2 Tidd 831, 4 Will. Ab. 700, 5 ib. 131, 3 D. & E. 434.
*392 But the second count is bad on principle. The promise is without consideration. The promise of defendant is nudum pactum, unless it were made, (and so stated in the declaration,) in consideration of some promise concurrently made by plaintiff to defendant, or in consideration of the sale and delivery of the goods concurrently with the promise. Neither happened here. The sale is averred to have been made after the promise, and no promise is stated to have been made in consideration of that promise. If A, say to B, if you will sell me your horse I will give you $100 for him, and B, do no concurrent act, but takes time to consider, is the promise binding? Certainly not. It is not on either, for it is not binding on B. But if afterwards B, do sell the horse to A, a new contract is made, and that contract must be stated: the promise is stated to have been made after the sale, unless the contract be founded upon mutual promises. But here no legal liability is stated—no promise to sell by the plaintiff—and no sale averred, as a consideration of the promise, 1 Caines Ca. 583, 1 Root’s R. 294, 3 T. R. 653.
Neither in that count is there a positive averment that the plaintiff delivered defendant all the merchandize he then had on hand in his Store at Detroit; and yet this matter must according to the soundest rules of good pleading, have been averred with the utmost certainty. Could an averment like the one in this count be traversed? Certainly not, for the matter of it is no where positively asserted.
The third count, for aught appears, is bad, according to former decisions of this Court by which the writ is considered a part of the record. I have been in the habit myself, of thinking that the writ is no part of the record, unless specially made so by being spread upon the record after oyer craved. But if for one purpose a part of the record, it must be so for all purposes. All pleadings, it is said, must be taken most strongly against those who plead. By that rule this count is clearly bad, for it does not appear but that the promise there set out, may have been made after the date of the writ, for both seem to have been on the same day. But when may an action be said to have been commenced, on the day of the date of the writ, or on the day of the service? If, as the better opinion would seem to be, the date of the service be the commencement of the suit, then, past all doubt, the suit was commenced before a right of action had accrued; a defect which, appearing on the face of the record, the court cannot get rid of.
The fourth count is decidedly bad, for it states no promise. Will the court intend a promise where none is stated? See 2 Wash. R. 187, Stra. 793, Lawyers Asst. 83, 322, 335.
The fifth count is bad, for it does not show to whom the money was paid, nor to whose use.
Were I to request Judge Woodward to lay out and expend for the Cath-olepestemead $500, and he were to do so, it would be with this, a case *393 precisely analagous. Now could Judge Woodward recover this money, upon proof only that he had expended it at my request ? If he could recover in such case, then perhaps this fifth count may be good;
but if good, how much money might not be recoverd back, which Judge Woodward with so ardent philanthropy solicited the disbursement of?—
For if it be unnecessary, and indeed incompetent, for the plaintiff to prove that which is not stated, it follows that enough is stated in this count, to justify a recovery. If enough be stated and proved, then I believe every individual who has contributed to the expense of the Catholepestemead, may recover the whole of such sum of Judge Woodward; for every cent so expended was undoubtedly at his special instance and request.
Nothing is presumed after verdict. 4 T. R. 47a, 2 Wills. Ab. 435, 1 T. R. H5. 543. 7 T. R. 523-—” _
_ This case was several times adjourned for argument on the part of the plaintiff; but on the 31 Deer, it was determined without farther argument.
WITHERELL, JUDGE; gave no opinion.
GRIFFIN, JUDGE;
was of opinion the motion ought not to be granted. (The objections, he said, “were nearly the same as were made on the motion for a new trial. We then overruled them, and must do the same now.”) He considered the objections all together trivial and unfounded.
WOODWARD, PRESIDING JUDGE.
“There is no good reason al-ledged in Support of this motion on which the judgment can be arrested.
The declaration is in every respect well drawn, and I see no part of it the least objectionable. The defects stated are technical and frivolous.The motion is overruled. Let judgment be entered for the plaintiff.”
“Roby vs. Reaume.
Answer to exceptions to the first count.
The declaration follows the contract, and is drawn according to settled precedents. Interest is matter of law, and not to be set out. If the objection has any force, it should have been made by special demurrer. The verdict of the jury cures it. 5 Bac. 316, 317.
If the note had been executed in New York, the court would have instructed the jury to find 7 per cent, interest according to the custom of that *394 place. The maxim of Law that, That is certain which can be rendered certain, applies in this instance.
2d count,—was waived. But the objections to it are not supported. Mutual promises are set forth, with the necessary averments on the part of the plaintiff of the delivery of the goods under & pursuant to the agreement. It has sufficient substance. 5 Bac. 3x7.
3d count. The objection to this count has no weight in it. The defendant begs the question. The court will never presume any thing against a fair verdict; but will endeavor by every reasonable presumption to support it.
4th count. The consideration of the promise is stated; also a promise to pay. The defendant is stated to have undertaken to pay, which is a sufficient promise. The objection is technical, and cured by verdict.
5th count. The declaration states the money paid at the special instance & request of defendant. If it be a good exception, it should have been made on demurrer. The verdict cures the defect, as it finds the facts necessary, under the proofs adduced.
General verdict. Where some of the counts are proved and others not, the verdict may be applied to the counts proved, and judgment thereon entered. 5 Corny. 518, 2 Bur. 1235-6-7, 1 Salk. 132, 133, Doug. 377, 1 H. Blk. 79, (note)

See end of this case

See opinion ofLd. Camden in Hindson vs Hersey. See also notes at the end of this case.